# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ROBERT LOZINA, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:19-CV-2909 SRW |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 21. Defendant filed a Brief in Support of the Answer. ECF No. 24. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

I.  **Factual and Procedural Background**

On October 7, 2016, Plaintiff Robert Lozina protectively filed an application for disability benefits under Title II, 42 U.S.C. §§ 401, *et seq.* Tr. 159-60. Plaintiff's application was denied on initial consideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 98-99. Plaintiff and counsel appeared for an initial hearing on September 18, 2018. Tr. 45- 75. The ALJ also received testimony from vocational expert ("VE") Lisa Courtney. *Id*. On January 8, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr.

1

13-31. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, which the Appeals Council denied on August 24, 2019. Tr. 1-3. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II. Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th

Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from

3

[the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932. If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or

4

because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 15, 2013; Plaintiff has the severe impairments of diabetes mellitus with diabetic polyneuropathy and left shoulder osteoarthritis; and Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 20-23. The ALJ found Plaintiff has the following RFC:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: he can lift up to ten pounds occasionally; he can stand or walk for two hours and sit for up to six hours in an eight-hour work day, with normal breaks; he can occasionally climb ramps, but never climb stairs, ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel and crouch, but never crawl; and he should avoid exposure to extreme cold, operational control of moving machinery, unprotected heights and hazardous machinery.

Tr. 24. At Step Four, the ALJ found Plaintiff was unable to perform his past relevant work. Tr. 29. The ALJ further found Plaintiff was born on April 12, 1970, and he was 43 years old on the alleged onset date, which is defined as a younger individual age 18-44. Tr. 29. Plaintiff subsequently changed age category to a younger individual age 45-49. *Id*. Plaintiff has at least a high school education and is able to communicate in English. *Id*. The ALJ determined the transferability of job skills was not material to the determination of disability because the vocational tables would direct a finding of not disabled in all applicable categories. *Id*. At Step Five, relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there are jobs existing in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as Stuffer,

5

Inspector, and Table Worker. Tr. 30. The ALJ concluded Plaintiff was not under a disability between August 15, 2013, and the date of his decision, January 8, 2019. Tr. 31.

## IV. Discussion

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ improperly discounted Plaintiff's complaints of pain; (2) the ALJ improperly discounted Plaintiff's treating physician, Dr. Laurence Kinsella's opinion; and (3) substantial evidence does not support the RFC.

### A. Plaintiff's Complaints of Pain

Plaintiff asserts the ALJ improperly discounted Plaintiff's complaints of pain due to alleged inconsistencies between Plaintiff's statements and the record. Plaintiff argues these alleged inconsistencies are not actually inconsistent with Plaintiff's statements.

When evaluating a claimant's subjective statements about symptoms, such as pain, the ALJ must consider all relevant evidence, including what are familiarly known as "the *Polaski* factors," that is, the claimant's prior work record; daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted); *see also* 20 C.F.R. § 404.1529. If the ALJ finds the statements to be inconsistent with the evidence of record, he must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). An ALJ must do more than merely invoke *Polaski* to insure "safe passage for his or her decision through the course of appellate review." *Harris v. Shalala*, 45 F.3d 1190,

6

1193 (8th Cir. 1995). Instead, he "must set forth the inconsistencies in the evidence presented and discuss the factors set forth in *Polaski*[.]" *Cline*, 939 F.2d at 565; *see also Renstrom,* 680 F.3d at 1066; *Beckley v. Apfel*, 152 F.3d 1056, 1059-60 (8th Cir. 1998). It is not enough to merely state that inconsistencies are said to exist. *Cline*, 939 F.2d at 565. While an ALJ need not explicitly discuss each *Polaski* factor, he nevertheless must acknowledge and consider these factors before discounting a claimant's subjective complaints. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

Plaintiff testified he has pain in his hands, feet, and his legs below his knees that limits his ability to function. Tr. 54. His left hand hurts the most and feels like it is frost bitten. Tr. 55. He cannot pick up anything with his left hand and does not even touch his daughter with it because he cannot feel any sensation. *Id*. He often wears a glove on his left hand to protect it from the cold and any breeze. Tr. 61. He can lift things with his right hand, but he has to use a towel if touching anything cold because it causes extreme pain if he touches it directly. Tr. 56. Plaintiff said his feet feel like needles are "coming in and out" and his shins hurt, feeling like "fire needles." *Id*.

Plaintiff testified he has no balance and can stand for about five minutes before needing to sit down. Tr. 57. He can sit for 30 minutes to an hour but then needs to move around. *Id*. When he is sitting, he needs to have his legs elevated. *Id*. Pain routinely wakes him up throughout the night and when he tries to sleep during the day. Tr. 58-59. He takes Oxycontin and Tramadol which lowers his pain from a nine to a seven out of ten. Tr. 59. He thinks about pain every second of the day which affects his concentration. Tr. 54, 59. He watches television, but he often gets distracted by his pain. Tr. 64.

Plaintiff testified his physical impairments have caused depression because he cannot do anything with his daughter but sit on the couch. Tr. 65. He stated these conditions have ruined his life. *Id*. He used to love camping and being outdoors. *Id*. He wanted to teach his daughter how to swim, but he cannot. *Id*. He would not wish this on anyone, "not his worst enemy." *Id*.

The ALJ determined that although Plaintiff's medical impairments could reasonably be expected to cause Plaintiff's symptoms, Plaintiff's statements as to the intensity, persistent, and limiting effects of his symptoms are not entirely consistent with the record. Tr. 26. In making this determination, the ALJ considered Plaintiff's testimony, and then considered Plaintiff's medical records as to his left shoulder osteoarthritis and diabetes mellitus. Tr. 25.

The ALJ noted Plaintiff was consistently advised to take his diabetes medication to control his blood sugar and allow his nerves to heal and improve his neuropathy. Tr. 26. Plaintiff refused to take his diabetes medication and refused to take insulin. *Id.* Plaintiff cited financial reasons. *Id.* However, Plaintiff regularly took Oxycontin and Tramadol to relieve his pain. Tr. 59. The ALJ summarized Plaintiff's treatment records with his pain specialist and specifically noted that in the most recent treatment records from August 2018, Plaintiff rated his pain as five out of ten without medication and a two out of ten with medication. Tr. 27. Plaintiff also refused to follow his doctor's orders to follow a strict diet and exercise regularly to control his diabetes. Tr. 27. He also failed to monitor his blood sugar. Tr. 311.

The ALJ also extensively discussed the ways in which Plaintiff's testimony was inconsistent with the medical record, which Plaintiff now contests. However, the record supports the ALJ's analysis. For instance, although Plaintiff claims a disability onset date of August 15, 2013, at that time, a primary care physician certified Plaintiff was free to work with no restrictions after Plaintiff sought such certification for the purpose of filing for unemployment

8

benefits. Tr. 281-82. Plaintiff also testified his severe pain caused him to lose sleep and limit his functioning, yet his most recent treatment notes from his pain specialist in August 2018, stated his pain level is a two out of ten with his medications. Tr. 497-98. As the ALJ noted, although Plaintiff testified that he has issues with balance and claims he must elevate his feet while sitting, there is no discussion of either of these issues in the medical records. Plaintiff testified his current medications of Tramadol and Oxycontin cause him to feel tired, but his treatment records only report fatigue with the medications he discontinued. Tr. 314, 381, 560. Plaintiff also testified he cannot drive but his function report says he is able to drive short distances, and he also rides his scooter to take his daughter to the park. Tr. 214, 217. Although Plaintiff testified he sits in a recliner all day, his doctors recommend he exercise regularly. Tr. 446, 453, 464. As noted above, Plaintiff refused to follow this recommendation. Tr. 275.

In analyzing these inconsistencies, the ALJ considered Plaintiff's daily activities, the duration, frequency and intensity of his symptoms, the dosage, effectiveness and side effects of his medication, and Plaintiff's functional restrictions, as he was required to do. *See Halverson*, 600 F.3d at 931; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted); *see also* 20 C.F.R. § 404.1529. The ALJ found Plaintiff's statements to be inconsistent, and he gave detailed specific reasons for discounting Plaintiff's testimony. *See* SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom*, 680 F.3d at 1066; *Cline*, 939 F.2d at 565. The ALJ's decision is well-reasoned, and the Court finds substantial evidence in the record supports the ALJ's decision to discount Plaintiff's testimony.

  **B.**  **Plaintiff's Treating Physician's Opinion**

Plaintiff asserts the ALJ improperly discounted Plaintiff's treating physician, Dr. Laurence Kinsella's opinion. Dr. Kinsella is Plaintiff's neurologist. He filled out a Medical

9

Assessment form in July 2018 wherein he opined Plaintiff has severe pain in his hands and feet, and in his legs below his knees. Tr. 714. He opined Plaintiff has significant limitation of motion, and Plaintiff's pain, and other symptoms, constantly interferes with Plaintiff's attention and concentration. Tr. 715. Dr. Kinsella stated Plaintiff is unable to perform or be exposed to public contact, routine, repetitive tasks at a consistent pace, detailed or complicated tasks, close interaction with coworkers/supervisors, or fast paced tasks. *Id*. He further opined Plaintiff cannot walk even one block without rest or severe pain, can sit for one hour at a time and stand for ten minutes at a time. Tr. 716. He believes Plaintiff can stand or walk for less than two hours and sit for at least six hours in an eight-hour workday. *Id*.

Dr. Kinsella opined Plaintiff would need more than ten breaks during a workday for at least ten minutes each, and Plaintiff's feet should be elevated two feet while sitting for 80 percent of the time. Tr. 716-17. He stated Plaintiff can rarely lift less than ten pounds and never lift more than that weight; he can rarely twist and can never stoop or bend. Tr. 717. Dr. Kinsella believes for ten percent of the workday, Plaintiff can grasp, turn, and twist objects, do fine manipulations with his fingers, and reach. *Id*. Finally, Dr. Kinsella opined Plaintiff would be absent from work more than four days a month. *Id*.

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite his impairments and his physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2).[1] All medical opinions, whether by treating or consultative examiners, are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of

---

[1] This regulation applies to claims filed before March 27, 2017 and applies here because Plaintiff filed his claim in October 2016.

10

treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanations; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c); *see also Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000). Good reasons for assigning lesser weight to the opinion of a treating source exist where the treating physician's opinions are themselves inconsistent, or where other medical assessments are supported by better or more thorough medical evidence." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (internal citations omitted).

The ALJ gave Dr. Kinsella's opinions some weight and included Dr. Kinsella's opinion that Plaintiff can sit for up to six hours in an average eight-hour workday in his RFC because it was consistent with the treatment record. Tr. 28. However, the ALJ found the remainder of Dr. Kinsella's opinion was not supported by objective medical evidence. *Id*. The Court agrees.

In October 2012, the first treatment records from Dr. Kinsella in the record, Dr. Kinsella noted Plaintiff had difficulty walking and painful feet with excessive sensitivity on the soles of his feet. Tr. 332-33. However, in his treatment notes from 2013 through 2016, Dr. Kinsella noted Plaintiff had a normal gait with symmetric strength and limb movements. Tr. 311, 317, 323, 724-25, 727. Although Dr. Kinsella noted in April 2017 and July 2018 that Plaintiff's neuropathy symptoms were getting worse and spreading up his legs, he made no mention of a need to elevate his feet, or issues with manipulation of Plaintiff's fingers. Tr. 722-27. Furthermore, treatment notes show Plaintiff's pain is controlled with medication. Tr. 497-98. Plaintiff has had negative straight leg raise tests since before his alleged onset date, and his exams consistently show normal muscle strength. Tr. 396, 403, 405, 445, 448. The ALJ gave good reasons for assigning lesser weight to Dr. Kinsella's opinions. Dr. Kinsella's opinions are not supported by documentation in the medical record. The ALJ's decision to discount Dr. Kinsella's opinion is supported by substantial evidence in the record.

**C.     The RFC**

Finally, Plaintiff argues substantial evidence does not support the RFC. He asserts that the RFC does not account for the neuropathy in his hands, his severe impairment of left shoulder osteoarthritis, or the pain in his feet when sitting.

The RFC is defined as what the claimant can do despite his or her limitations and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(a). The RFC is a function-by-function assessment of an individual's ability to do work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, and the claimant's own

descriptions of his limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

    The ALJ found that Plaintiff has the following RFC:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: he can lift up to ten pounds occasionally; he can stand or walk for two hours and sit for up to six hours in an eight-hour work day, with normal breaks; he can occasionally climb ramps, but never climb stairs, ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel and crouch, but never crawl; and he should avoid exposure to extreme cold, operational control of moving machinery, unprotected heights and hazardous machinery.

Tr. 24. The ALJ determined Plaintiff's RFC by considering Plaintiff's testimony, medical records, the opinions of a state agency's psychologist, a state agency medical doctor, Dr. Kinsella, and Dr. Joseph Santiago, Plaintiff's primary care physician.

    The ALJ adopted and incorporated into the RFC Dr. Kinsella's opinion that Plaintiff can sit for two or more hours at a time and for up to six hours in an average eight-hour workday. Tr. 714-18. The ALJ gave limited weight to the state agency's medical doctor's opinion that Plaintiff could lift or carry up to 50 pounds occasionally and 25 pounds frequently, that Plaintiff can frequently climb ramps and stairs, ladders, ropes and scaffolds, occasionally stoop, and frequently kneel, crouch, and crawl finding that the opinion did not take into account Plaintiff's chronic complaints of pain and long term use of narcotics to treat the pain. Tr. 28. Contrary to Plaintiff's argument, the ALJ did consider Plaintiff's left shoulder osteoarthritis in limiting Plaintiff's lifting to ten pounds occasionally. Tr. 28. Although Dr. Kinsella opined Plaintiff should rarely lift up to ten pounds, the medical records support the ALJ's limitation. In late 2017 and early 2018, Plaintiff received several numbing injections in his right and left shoulders to help control his pain, which at times Plaintiff rated as a twelve out of ten. Tr. 474-76, 481-88.

Treatment notes from later in 2018, indicate Plaintiff was doing better and his pain had lessened; no further injections were given in Plaintiff's shoulders. Tr. 489-98. Dr. Kinsella's own notes state, "limb movements and strength symmetric" and "shoulder shrug full strength." Tr. 722-27.

The ALJ also considered Plaintiff's problems with gait and difficulty walking, reflected in his doctors' treatment notes, in limiting Plaintiff to occasionally climbing ramps but never stairs, ladders, ropes, or scaffolds. Tr. 28, 332. Plaintiff asserts the ALJ did not adequately consider the neuropathy in his hands, but the ALJ included restrictions for exposure to extreme cold, climbing ladders, ropes, and scaffolds, and operating moving machinery, all of which involve use of Plaintiff's hands. Furthermore, Plaintiff testified to more severe symptoms in his hands than the medical record reflects. In October and November 2017, Plaintiff's pain specialist noted Plaintiff's hands were painful, touch was painful, and "bilateral hands tender to touch on dorsum of hands." Tr. 477-80. In April 2017, Dr. Kinsella noted that Plaintiff's hands were sensitive to cold water but otherwise has no other notes regarding Plaintiff's hands. Tr. 722. There is no other medical evidence in the record of the severity of Plaintiff's neuropathy in his hands. Thus, the ALJ included some restrictions for Plaintiff's hands, but not the severe restrictions Plaintiff seeks. The ALJ properly considered Plaintiff's testimony, the medical record, and medical opinions in determining the RFC, which is supported by substantial evidence in the record.

**V.    Conclusion**

For the reasons set forth above, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Robert Lozina's Complaint is **DISMISSED with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 8th day of December, 2020.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**